BENJAMIN F. JERVIS, RESPONDENT, v. JESSE HOYT AND OTHERS, APPELLANTS.

*Principal and agent — Factor — extraordinary power in cases of emergency — Repudiation of factor's acts by principal — to be made within reasonable time.*

A factor is bound to obey the orders of his principal. But where no orders are given, or the orders are not clear, explicit and peremptory, the factor is only bound to good faith and reasonable discretion.

Emergencies may arise in which an agent or a factor may, from the necessities of the case, be justified in assuming extraordinary powers, and his acts, fairly done under such circumstances, bind the principal.

Acts done in the *bona fide* efforts to save perishing property come within the rule. If the principal objects to the acts of his agent, he should dissent, and give notice of such dissent in a reasonable time, or his assent will be presumed, even in case of· a violation of instructions.

A principal cannot, by preserving silence on being informed of his factor's transactions in his behalf, keep himself in a position to avail himself of the transaction if it prove to be profitable, and to repudiate it if it be otherwise.

APPEAL from a judgment in favor of the plaintiff, entered on the report of a referee. The action was brought to recover $10,611.54, an alleged balance of account due to plaintiff, who was a banker, from the defendants, factors and dealers in grain, residing in the city of New York.

*C. Van Santvoord,* for the appellants.

*A. H. Bailey,* for the respondent.

TALCOTT, J.:

The referee in this case has held that the plaintiff is properly chargeable with the losses which occurred on all the lots of corn, taken up in behalf of the plaintiff from the "New York Guaranty and Indemnity Company," except the loss on what is known in the case as the $23,000 lot, as to which he determines that the loss, which he states at $5,136.25, must be borne by the defendants. On a careful examination of the case, we think the referee erred, in charging the loss on the $23,000 lot to the defendants, for several reasons. The defendants in this matter were the factors of the plaintiff. A factor is bound to obey the orders of his principal. But where no orders are given, or where they are not clear, explicit and peremptory, the factor is only bound to good faith and reasonable discretion.* And an examination of the testimony and correspondence contained in the case, shows that the general relations between the parties were, that the plaintiff, in regard to all this property, while of course expressing the hope and expectation of being able to get out of the transaction with the Indemnity Company, at a profit, or at least without any loss, still, he confided in the judgment, good faith and discretion of the defendants, to manage the matter as his factors, and as they might think to his

* Story on Agency, § 74–186 ; La Farge v. Kneeland, 7 Cowen, 456.

advantage. It does not appear that the defendants have been wanting in reasonable discretion, and no attempt is made to impeach their good faith, nor, so far as we can discover, is the plaintiff able to put his finger upon any specific order which the defendants have violated. But more closely to examine the history of what is called the $23,000 lot, we find that the Indemnity Company held this lot for a specific advance of $23,000. It consisted of three boat loads of corn, in all something over 22,000 bushels, by the boats J. C. Harper, Hattie Eliza and R. W. Boyd. This, with the other lots, was in the hands and custody of the Indemnity Company, under the arrangement made by the plaintiff, that he might, at his option, take out of their custody any particular lot or part of a lot, upon paying up the advances which had been made upon that lot. The whole was under the general charge of the defendants at New York, as the factors of the plaintiff, who resided at Cazenovia, in Madison county. On the 23d day of November, 1868, the defendants discovered that the cargo of the R. W. Boyd was heated, and was receiving damage. The market was then rising. To prevent further loss and damage to the cargo of the R. W. Boyd, the defendants made an arrangement with the Indemnity Company, whereby they were permitted to take out of the custody of the company the cargo of the Boyd, and sell the same, upon the agreement that, in a few days, they would pay the whole $23,000, advanced on that lot, and take the whole of it. And they became thereby bound to pay the company the whole $23,000, before or at the maturity of the loan. As we understand the case, and as the acts and correspondence of the parties demonstrate, the authority to take up any or all the loans, when they should think it for the advantage of the plaintiff, was confided to the discretion and judgment of the defendants; but, without reference to this general authority, such an act as the taking up of the $23,000 loan, on a rising market, for the purpose of saving one of the cargoes from perishing, was within the general powers of the factors. Emergencies may arise, in which an agent or factor may, from the necessities of the case, be justified in assuming extraordinary powers, and his acts, fairly done under such circumstances, bind the principal. Amongst other emergencies, acts done in the *bona fide* effort to

save perishing property is one.*   When the defendants bound themselves to take up the whole $23,000 lot, the market was rising; and if the corn could have been sold without unnecessary delay, not only there would have been no loss, but, as Hazeltine testifies and which is undisputed, a very considerable profit would have accrued to the plaintiff upon that lot.   But we think, moreover, that the plaintiff ratified the transaction by which the defendants became bound to take up the whole $23,000 loan.   On the twenty-fourth day of November, the same day on which the defendants had agreed to take it up, or the next day, they wrote to the plaintiff as follows:   " We find on examining the corn left with the Indemnity Company all in good order except Bt. R. W. Boyd, 6,426$\frac{3}{16}$ bushels.   This load is a very unsound one, has been kiln-dried when *hot*, and is now alive with weevil, who have eaten into the grain.   Scarcely a kernel but cut.   We sold this load at 107$\frac{1}{2}$ in store just as it is.   It will have to be turned over several times to get the weevil out of it.   Prime corn was steady at 112 to 14 c in store; 116 to 16$\frac{1}{2}$ afloat."   The plaintiff had a list of all the lots of corn held by the Indemnity Company, with a statement of the amount loaned on each lot, from which it appeared that, on the loads of the three boats, of which the R. W. Boyd was one, there was a loan of $23,000, due December 21st, 1868; and he knew that, according to his arrangement with the Indemnity Company, the sale of the cargo of the Boyd involved the taking up, or the agreement to take up by the defendants in his behalf, of the whole loan of $23,000.   On the twenty-sixth of November, the plaintiff wrote to the defendants, as follows:   " I have received your advice of sale of two loads of corn.   The market runs against us so far.   Mr. Munn urges that the sales be slow at present.   I will go to New York Saturday or Monday."   This was apparently in reply to two letters of the defendants, under date of the twenty-third and twenty-fourth, and apparently one of the loads referred to as sold, is the cargo of the R. W. Boyd.   At all events, it does not appear that the plaintiff made any objection to, or found any fault with the transaction.   On the twenty-eighth day of November, the plaintiff telegraphed to the defendant:   " Hold balance of corn till I get to New York."   On the thirtieth, the plaintiff wrote

* Story on Agency, § 141.

the defendants : " Yours of twenty-seventh is received. Glad to notice some improvement in the market. At request of our Chicago friends, I telegraphed you on Saturday not to make further sales until I see you. I expect to be in New York Wednesday." If the principal objects to the acts of his agents, he ought to dissent, and give notice of such dissent, in a reasonable time, or his assent will be presumed, even in case of a violation of instruction.[*] The effect of the plaintiff's silence, as to the agreement to take up the $23,000 loan, was this : being assumed by the factors to be the corn of the plaintiff, and held by them on his behalf, of course it came under the orders of the plaintiff not to sell until he arrived at New York, or gave further directions. Whereas, if the plaintiff had intended to repudiate the transaction, and claim that the defendants had made that lot of corn their own, as it appears from the undisputed testimony of Hazeltine, it might then have been sold at a considerable profit. A principal cannot, by preserving silence, on being informed of his factor's transactions in his behalf, keep himself in a position to avail himself of the transaction if it proves to be profitable, and to repudiate it if otherwise. And this appears to be what the plaintiff seeks to do in this case. Being under orders not to sell, the defendants did not pay the balance of the $23,000 to the Indemnity Company till the loan matured on the 21st December, 1868. In the meantime, the plaintiff had been to New York, as was shown by the entry of his name in his own handwriting, on the hotel register. Mr. Hoyt, one of the defendants, says, that while plaintiff was in New York at that time, he expressly instructed him to take up the $23,000 loan at maturity. The plaintiff, however, claims to have no recollection of having been in New York till the following summer. And the referee makes no finding in regard to any personal interview between the parties, after the original employment of the defendants as factors. It is very clear, however, that the plaintiff was fully advised of the payment of the $23,000 loan, by the letter of the twenty-seventh of December, and that the defendants then had on hand for the account of the plaintiff, amongst other corn, the two remaining boat loads of the $23,000 lot. He was also informed of this in other letters, and by the accounts rendered from

[*] Vianna v. Barclay, 3 Cowen, 281; Cairnes v. Bleecker, 12 J. R., 300.

time to time, but never disavowed the transaction, or objected to it, till long after it had taken place, and when, as it seems to us, a considerable loss on this $23,000 lot had accrued, apparently from the instructions of the plaintiff to withhold it from sale, when it could have been sold at a profit. We do not see how, upon the evidence afforded by the case, the defendants can be held liable for the loss on the $23,000 lot, which is all that it is necessary to consider on this appeal. We think the defendants were justified in their agreement to take it up, under the circumstances, and at the time when they did so. And if they were not strictly justified in so doing, the plaintiff ratified the transaction, by omitting to object to it within a reasonable time after notice of it, but instead, writing as though he understood and approved of it.

A new trial must be ordered, with costs to abide the event, and a new referee substituted.

Present — BARNARD, P. J., TAPPEN and TALCOTT, JJ.

Ordered accordingly.